IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RICHARD ALLEN DUNN,            )
                               )
        Plaintiff,             )
                               )
    v.                         )    1:17CV507
                               )
NANCY A. BERRYHILL,            )
Acting Commissioner of Social Security, )
                               )
        Defendant.             )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Richard Allen Dunn ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits in April 2012, alleging a disability onset date of February 28, 2008 in both applications. (Tr. at 163, 293-306.)[1] He later amended his alleged onset date to February 5, 2012. (Tr. at 18.) Plaintiff's applications were denied initially (Tr. at

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

106-25, 184-88) and upon reconsideration (Tr. at 126-59, 190-98). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 201-02.) Plaintiff, represented by an attorney, attended the subsequent hearing on June 12, 2014. (Tr. at 163.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from his alleged onset date through September 5, 2014, the date of the administrative decision. (Tr. at 174.) However, on September 23, 2015, the Appeals Council remanded the case for a new hearing in order for the ALJ to consider newly submitted medical evidence and to obtain vocational evidence in the form of vocational expert testimony. (Tr. at 181-82.) Accordingly, Plaintiff, along with an attorney and an impartial vocational expert, attended a second administrative hearing on May 5, 2016. (Tr. at 18.) Following this hearing, the ALJ again concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 33.) On April 12, 2017, the Appeals Council denied Plaintiff's request for review of this decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the

correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

4

capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" between February 5, 2012, his alleged onset date, and December 31, 2012, his date last insured. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

> Chronic Obstructive Pulmonary Disease; Asthmatic Bronchitis; History of Tobacco Abuse; Diabetes Mellitus, Type II; Sleep Apnea; Chronic Knee pain secondary to osteoarthritis, s/p multiple Surgeries; Essential Hypertension; and Chronic Anxiety Disorder[.]

(Tr. at 21.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 22-25.) The ALJ therefore assessed Plaintiff's RFC and determined that he could perform light work with the following additional limitations:

> lifting and/or carrying up to 10 pounds occasionally; standing and/or walking for 2 hours in an 8-hour workday; sitting for 6 hours in an 8-hour workday; occasional climbing of ramps or stairs, but never climbing ladders, ropes, or scaffolds; occasional balancing; frequent stooping, kneeling, crouching, and crawling; frequent but not continuous handling and fingering with the hands bilaterally; occasional exposure to extreme cold and extreme heat; occasional exposure to irritants such as fumes[,] odors, dusts, gases, poorly ventilated areas, and chemicals; and occasional exposure to operational controls to moving machinery and unprotected heights. [Plaintiff] must use a hand held assistive device—a walking cane—with the left dominant hand at all times when walking, but he may use the right hand to lift and/or carry. [Plaintiff] is limited to work that is simple and routine, and [he] is also limited to a low stress job with only occasional simple decision-making requirements, occasional changes in the work setting, and no fixed production rate or pace work. In addition, [Plaintiff] is limited to occasional interaction with the public and co-workers with no tandem tasks, but [Plaintiff] can respond appropriately and follow directions from supervisors.

(Tr. at 25.) Based on the RFC determination, the ALJ found at step four of the analysis that Plaintiff could not perform any of his past relevant work. (Tr. at 30-31.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in the national economy. (Tr. at 31-32.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 32-33.)

Plaintiff now raises two challenges to the ALJ's decision. First, he contends that, at step five, the ALJ failed to obtain a reasonable explanation for the apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). Second, Plaintiff argues that the RFC failed to properly account for his limitations in concentration, persistence, or pace as required by Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Because the Court finds that Plaintiff's first contention requires remand, the Court need not address the second issue at this time.

  A.  DOT Conflict

Plaintiff first challenges the ALJ's reliance on the vocational expert's testimony at step five of the sequential analysis. In particular, the Plaintiff contends that the Vocational Expert's testimony conflicted with the DOT, but that the ALJ failed to obtain a reasonable explanation for the conflict. In Pearson v. Colvin, 810 F.3d 204 (4th Cir. 2015), the Fourth Circuit clarified the steps an ALJ must take to identify and resolve apparent conflicts between a vocational expert's testimony and the DOT. Specifically, the Fourth Circuit held that, if an expert's testimony apparently conflicts with the DOT, the expert's testimony can only provide substantial evidence to support the ALJ's decision if the ALJ received an explanation from the expert explaining the conflict and determined both (1) that the explanation was reasonable and (2) that it provided a basis for relying on the expert's testimony rather than the DOT. Pearson, 810 F.3d at 209-10; see also Rholetter v. Colvin, 639 F. App'x 935, 938 (4th Cir. 2016).

In the instant case, Plaintiff contends that the vocational testimony on which the ALJ relied at step five of the sequential analysis conflicted with the DOT as to all of the identified

7

jobs. Specifically, the ALJ identified three representative jobs available in the national economy that Plaintiff could perform: Document Preparer (249.587-018), Final Assembler (713.687-018), and Check Weigher (737.687-026). Plaintiff correctly notes that the job of Document Preparer requires a Reasoning Level of 3, defined as requiring the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." See DICOT 249.587-018, 1991 WL 672349. Previous cases in this Circuit have found an apparent conflict between jobs requiring a Reasoning Level of 3 and a claimant's limitation to jobs involving only simple, routine, repetitive tasks. See, e.g., Mullis v. Colvin, No. 1:11CV22, 2014 WL 2257188 (M.D.N.C. May 29, 2014) (Osteen, C.J.) (finding an apparent conflict between an RFC limitation to simple, routine, repetitive tasks at a low production pace and low stress environment and a VE's testimony that Plaintiff could perform a job to which the DOT assigned a Reasoning Level of 3); see also Henderson, 643 F. App'x. 273, 277 (4th Cir. April 5, 2016) (holding that "there is an apparent conflict between an RFC that limits [the claimant] to one-to-two step instructions and GED Reasoning Code 2, which requires the ability to understand detailed instructions," and "the VE's conclusory statement that a conflict did not exist was insufficient"). Here, Plaintiff's RFC included a limitation to "work that is simple and routine" and "a low stress job with only occasional simple decision-making requirements." At no point did the ALJ ask the VE to explain the inconsistency between Plaintiff's RFC and the DOT Reasoning Level required to perform the job of Document Preparer, nor did the ALJ ever receive a "reasonable explanation for [this] discrepancy." See Pearson, 810 F.3d at 209.

Defendant counters that, "to the extent there is a conflict between reasoning level 3 and a limitation to simple, routine tasks," the vocational expert's identification of two additional jobs, both with a Reasoning Level of 1, renders any error harmless. (Def.'s Br. [Doc. #14] at 17.) However, in addition to his limitation to simple, routine tasks, Plaintiff's RFC further restricted him to jobs with "no fixed production rate or pace work" and "frequent but not continuous handling and fingering with the hands bilaterally." (Tr. at 25.) These limitations also conflict with the requirements of the jobs identified by the vocational expert. Most notably, the job of Check Weigher specifically requires *constant* handling, defined as "2/3 or more of the time," in direct conflict with Plaintiff's RFC. See DICOT 737.687-026, 1991 WL 680047. As with the reasoning level conflict above, the ALJ never identified the discrepancy in the handling requirement, never asked the VE to explain it, and never received a "reasonable explanation for [this] discrepancy." See Pearson, 810 F.3d at 209.

Although the job of Final Assembler presents a closer case, Plaintiff correctly points out that it "is part of the production process of eye glasses and/or sunglasses," raising the question of whether it must be performed at a production rate. (Pl.'s Br. [Doc. #11] at 6.) See DICOT 713.687-018, 1991 WL 679271. While the case law on this subject suggests that not all Final Assembler positions require a stringent production pace, it clearly indicates that a restriction to "no fixed production rate or pace work" would substantially reduce the number of potential jobs. Camarillo v. Berryhill, No. 3:16-CV-3285-M (BH), 2018 WL 1477152, at *9 (N.D. Tex. Mar. 2, 2018) (vocational expert testified that fifty percent of Final Assembler jobs required "strict quotas or forced-pace production rates"); Brown v. Comm'r of Soc. Sec., No. 1:14-CV-00720, 2015 WL 4430395, at *9 n.12 (N.D. Ohio July 20, 2015) ("For the final

assembler job, the VE indicated that the job numbers provided were reduced to account for the fact that some final assemblers use a hand tool with vibration and some require high or rapid production."). In the present case, the vocational expert failed to specify whether the 7,000 jobs available nationally took such a reduction into account, and the ALJ sought no clarification. (Tr. at 78.) This omission is particularly significant given the elimination of the other two jobs identified by the vocational expert. Under these circumstances, the ALJ lacked substantial evidence that Plaintiff "is capable of making a successful adjustment to other work *that exists in significant numbers in the national economy.*" (Tr. at 32) (emphasis added). Accordingly, the ALJ's error at step five of the sequential analysis requires remand under Pearson.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #13] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #10] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 11th day of July, 2018.

                                                  /s/ Joi Elizabeth Peake
                                              United States Magistrate Judge